IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN M., <br><br> **Plaintiff,** <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> **Defendant.** | Case No. 24-CV-2157-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability insurance and disabled widower benefits under Title II of the Social Security Act. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in determining that he did not medically equal medical listing 11.02 and further erred in assessing his residual functional capacity ("RFC") by failing to account for all limitations resulting from migraines. Because the Court concludes that the Commissioner's findings are not supported by substantial evidence, the Court reverses the Commissioner's decision.

**I.      Procedural History**

On July 8, 2022, Plaintiff concurrently filed applications for Title II Disability Insurance Benefits and Title II Disabled Widower's Benefits. He alleged a disability onset date of October 31, 2021. Plaintiff's applications were denied initially and upon reconsideration. He then asked for a hearing before an ALJ.

After a telephonic hearing on December 6, 2023, the ALJ issued a written decision on December 22, 2023, finding that Plaintiff was not disabled. Given the unfavorable result,

Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council. Plaintiff's request for review was denied on February 16, 2024. Accordingly, the ALJ's decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. He seeks reversal of the ALJ's decision and remand for a new administrative hearing. Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[1] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[3]

## III.   Legal Standards and Analytical Framework

Under the Social Security Act ("Act"), "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(2)(A), 416(i)(1)(a).

> engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe impairment, or combination of severe impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8] "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's RFC, which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[10] The claimant bears the burden in steps one through four to prove a

---

[5] *Id.* § 423(d)(2)(A).

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2023).

[7] *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); and then quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

disability that prevents performance of her past relevant work.[11]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since October 31, 2021—the alleged onset date.  She determined at step two that Plaintiff had the following severe impairments: migraine headaches, obesity, obstructive sleep apnea, PTSD, generalized anxiety disorder, and major depressive disorder.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. § 404 subpart P appendix 1.  Continuing, she determined that Plaintiff had the RFC to

> Perform medium work . . . in that he can lift and carry 50 pounds occasionally and 25 pounds occasionally.  He can stand and/or walk 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday.  The claimant can occasionally climb ladders, ropes, or scaffolds, frequently stoop, kneel, crouch, and crawl.  He cannot work at unprotected heights.  He is limited to simple, routine tasks.  He should have no interaction with the public.  He can have brief, superficial interactions with coworkers, but he can have occasional interactions with supervisors.  The claimant can tolerate few changes in a routine work setting and requires a low stress work environment, such as hourly quotas or assembly line work.  He would be off task 10 percent of the time during an 8-hour workday due to mental health symptoms.  He would also be absent 1 day a month on a consistent basis, including the need to leave early or arrive late due to mental health symptoms.[13]

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work.  After considering Plaintiff's age, education, work experience, and RFC, she determined at step five that there were jobs existing in significant numbers in the national economy that

---

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

[12] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

[13] Tr. 29.

4

Plaintiff could perform. Thus, the ALJ concluded that Plaintiff was not under a disability from October 31, 2021, through the date of her decision.

**IV.     Discussion**

Plaintiff argues that the ALJ erred at step three of the sequential evaluation because no substantial evidence supports her finding that his impairment of migraine headaches did not medically equal a listed impairment. At step three, the ALJ must determine whether the claimant's impairment meets a listed impairment or is equal in severity and duration to the criteria of any listed impairment such that it is medically equivalent to a listed impairment. Primary headache disorders, including migraines, do not meet a listing but are analyzed under Listing 11.02, the listing for epilepsy, to determine if they are medically equivalent to that listing.[14]

SSR 19-4p[15] provides guidance to the adjudicator on how to determine medical equivalence in cases involving primary headache disorders. Headaches that occur at least once a week for at least three consecutive months despite adherence to prescribed treatment are evaluated under Listing 11.02B; and headaches that occur at least once every two weeks for at least three consecutive months despite adherence to a prescribed treatment are evaluated under Listing 11.02D.[16]

Under Listing 11.02B, the adjudicator considers a detailed description from an approved medical source of a typical headache event, including all associated phenomena such as aura; duration, intensity, and accompanying symptoms; the frequency of the headaches; the claimant's

---

[14] SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).

[15] *Id*. SSRs do not have the same effect as statutes or regulations but, pursuant to 20 C.F.R. § 402.35(b)(1), are binding on the Social Security Administration and are binding as precedent in adjudicating cases.

[16] *Id*.

5

adherence to prescribed treatment; any side effects of treatment; and limitations in functioning, such as interference with activity during the day because of (for example) the need for a darkened and quiet room.[17]

Under Listing 11.02D, the adjudicator considers the same factors as under Listing 11.02B but must also determine whether the claimant has a marked limitation in one of five categories: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.[18]

Here, the ALJ found at step three that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of a listed impairment. While the ALJ discussed how Plaintiff's mental impairments (PTSD, generalized anxiety disorder and depressive disorder) do not meet or medically equal the criteria of listings 12.04, 12.06 and 12.15,[19] the ALJ failed to mention—much less discuss—Plaintiff's migraines or Listing 11.02. This is problematic because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, [the court] cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."[20]

Nonetheless, an ALJ's failure to include specific findings at step three may be harmless error if the ALJ provides such detailed findings at other steps in the analysis that support the step three decision in a readily reviewable manner.[21] Indeed, SSR 17-2p counsels that "[a]n adjudicator's

---

[17] SSR 19-4p, 2019 WL 4169635, at *7.

[18] *Id.*

[19] Tr. 27–28.

[20] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citations omitted).

[21] *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005).

articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."[22]

Here, at the RFC step, the ALJ made findings about Plaintiff's migraines. The ALJ found,

> During the relevant period, the claimant complained of dull headaches 3 to 4 times a week and severe migraine headaches 2 times a month after experiencing head trauma in his remote military service (Ex. 1F/14; 8F/45). He reported severe headaches lasted all day and were associated with nausea and sensitivity to noise and light. (Ex. 1F/14). He was prescribed Topamax, Aimovig injections, and disintegrating Rizatriptan tablets. (Ex. 1F/14). However, he has not required emergent treatment secondary to intractable migraine headaches, and he is not regularly followed by a neurologist. While the undersigned has accommodated the claimant's migraine headaches when forming the residual functional capacity assessment, the claimant's conservative treatment history and his normal physical examinations are inconsistent with the frequency and intensity of headaches alleged (*See e.g.*, 15F/10; 8F/45; 1F/14).[23]

The ALJ expressed no other findings but cited to an April 26, 2021 progress note by Jeffrey Schroeder, PA (Ex. 1F/14), that noted that Plaintiff complained of headaches that have been present for years, three to four times a week, having had a history of multiple head injuries in the military. Further, he noted that the character of the pain is dull pressure, throbbing, and accompanied by an aura with visual symptoms, such as flashes of light. The headaches are aggravated by loud noise and bright lights; alleviating factors include a dark, quiet room, and associated factors include sensitivity to light and noise.[24] The medical provider assessed the

---

[22] 2017 WL 3928306, at *4 (Mar. 27, 2017).

[23] Tr. 30.

[24] Tr. 356.

headaches as "[m]igraine with aura and without status migrainosus, not intractable"[25] and prescribed that Plaintiff start taking Topiramate and Rizatriptan Benzoate Tablet Distintegrating.[26]

The ALJ also cited to an April 26, 2022 progress note by Angela Aileen Marty, Nurse-Practitioner (Ex. 8F/45) that noted that Plaintiff has had headaches since multiple head traumas in the service and experiences migraine headaches two times a month. The headaches make him nauseous, and he cannot do anything all day. The headaches are getting worse. Triptan makes his symptoms better, light makes the headaches worse.[27] The provider further ordered a CT and Neuro consult for the migraines.[28]

The ALJ cites only one other progress note by Karla M. Robinson, Nurse Practitioner on August 17, 2023 (Ex. 15F/10)[29]. That medical provider noted the Plaintiff was taking Riboflavin daily for headache prevention, Topamax, and Rizatriptan.

The ALJ also stated,

> [T]he initial State agency medical consultant's opinion is only partially persuasive because it is supported by a narrative report of the evidence considered, but it is inconsistent with the claimant's ongoing treatment for headaches . . . .
>
> Similarly, the undersigned finds the State agency medical consultant's opinion upon reconsideration is partially persuasive because it is supported by a narrative report of the evidence considered, but the manipulative limitations and the multiple environmental limitations are inconsistent with the normal clinical signs and findings, including full extremity, grip and pinch strength, as well as the claimant's conservative treatment for migraine headaches.[30]

---

[25] Tr. 357.

[26] Tr. 358.

[27] Tr. 551–52.

[28] Tr. 554.

[29] Tr. 766

[30] Tr. 31.

8

The initial State agency medical consultant, Dr. Michael O'Day concluded that Plaintiff's migraines were not severe,[31] and he otherwise did not address his migraines in any respect. Dr. Dennis Pacl, the State agency medical consultant who rendered an opinion upon reconsideration, concluded that Plaintiff's migraines were severe.[32] He quoted from an October 7, 2021 progress note that stated that Plaintiff reported that the prescribed Topamax helped initially, but the medication was no longer giving him as much control. The note further stated that Plaintiff had experienced the headaches for years, three to four times a week, with aura such as flashes of light, aggravated by loud noise and bright light, and that alleviating factors included being in a dark, quiet room.[33] Dr. Pacl also quoted from the April 26, 2022 progress note that Plaintiff's headaches were getting worse, caused him nausea, and that Plaintiff reported he could do nothing all day.[34] Dr. Pacl also indicated that he had considered Listing 11.02, but he neither offered an explanation nor pointed to other evidence supporting an opinion that Plaintiff's migraines did not medically equal a Listing.[35] Finally, Dr. Pacl concluded that as "migraine precautions," Plaintiff had environmental limitations, in order to avoid concentrated exposure to extreme heat, noise, vibration, fumes, odors, gases, poor ventilation, and hazards (machinery, heights, etc.).[36]

Thus, neither the state agency medical consultants, nor the ALJ, provided any explanation as to why Plaintiff's headaches, which had been occurring for years, at the rate of 3 to 4 a week, and migraine headaches, occurring at the rate of 2 times a month, did not medically equal Listing 11.02. The limited medical progress notes referenced by the consultants and the ALJ indicate that his

---

[31] Tr. 68, 77.

[32] Tr. 88, 103.

[33] Tr. 92, 101.

[34] Tr. 93, 101.

[35] Tr. 104

[36] Tr. 91–92, 106–07.

migraines were not controlled by the medication. Though not mentioned by the state agency medical consultants or the ALJ, the medical records indicate that his providers added Aimovig injections in August 2021, but Plaintiff was still not getting adequate relief by October 2021.[37]

The ALJ did explain that Plaintiff's complaints were not credible because he was not regularly followed by a neurologist, had a conservative treatment history, had not required emergency treatment, and his complaints were "inconsistent with the normal clinical signs and findings."[38] But the limited record referenced by the ALJ indicates that his progressive treatment had not resulted in the migraines being under control. Indeed, Dr. Pacl recommended a number of environmental limitations for migraine precaution. The ALJ adopted none of these environmental limitations, explaining "the multiple environmental limitations are inconsistent with normal clinical signs and findings . . . as well as the claimant's conservative treatment for migraine headaches."[39] But, as SSR 19-4 explains, a primary headache disorder is diagnosed only after excluding alternative medical and psychiatric causes of headaches. Laboratory tests or imagining scans are used to rule out other medical conditions, not to determine whether someone has migraines or another primary headache disorder.[40]

On this record, the Court cannot adequately review the ALJ's opinion because the Court cannot assess whether relevant evidence adequately supports the ALJ's conclusion. Plaintiff urges the Court to reverse and remand to the agency and order them to obtain an opinion from a medical expert. Citing to SSR 17-2p,[41] which guides the adjudicator on what evidence they

---

[37] Tr. 344–45.

[38] Tr. 31.

[39] Tr. 31

[40] SSR 19-4P, 2019 WL4169635, at *4 (Aug. 26, 2019).

[41] SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017)

need to make findings about medical equivalence, the ALJ found that with respect to Plaintiff's migraine headaches, none of the three types of probative evidence existed in the record: (1) a prior administrative medical finding from a medical or psychological consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding; (2) medical expert evidence; or (3) a report from the Appeals Council's medical support staff supporting a finding of medical equivalence.[42]

The Commissioner correctly asserts that at step three, it is the claimant's burden to present evidence establishing that her impairment meets or medically equals a listing and that Plaintiff should have obtained medical expert evidence. To be sure, as the ALJ stated in her opinion,[43] the ALJ is not required to obtain medical expert evidence or a medical opinion to establish that the claimant's impairment is *not* medically equivalent to a listing but is only required to do so when the ALJ finds that an impairment *is* medically equivalent to a listing.[44] But on this record, the Court cannot meaningfully review the ALJ's determination that Plaintiff's migraines did not medically equal a listing. Thus, the Court declines to order the ALJ to obtain medical expert evidence at this point.

Plaintiff also argues that the ALJ's RFC analysis is not supported by substantial evidence. Though the ALJ states that she accommodated Plaintiff's migraine headaches when forming the RFC, what those accommodations are is not evident to the Court. Further, as discussed above, the ALJ did not adequately explain why she did not adopt the environmental limitations recommended by Dr. Pacl as migraine precautions. For these reasons, the Court cannot meaningfully review that part of the ALJ's decision either.

---

[42] Tr. 27–28.

[43] Tr. 28.

[44] *See* SSR 17-2p, 2017 WL 3928306.

## V. Conclusion

The ALJ's Step Three and RFC determinations are not supported by substantial evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED under the fourth sentence of 42 U.S.C. 405(g)** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: November 15, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
